UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL J. LUEBBERS, *Individually and on behalf of all others similarly situated*, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:24 CV 1500 JMB |
| BJC HEALTH SYSTEM, | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Paul J. Luebber's Third Motion to Remand (Doc. 64). The Motion is **GRANTED** and this matter is **REMANDED** to the Circuit Court of the City of St. Louis.

## I. Background

The Court assumes familiarity with the procedural background of this case and it will not be repeated here. Plaintiff Paul J. Luebbers is a clinical pharmacist employed by Defendant BJC Health System. On September 25, 2024, he filed a class action complaint in Missouri state court alleging claims related to overtime pay. He asserts that Defendant failed to pay overtime wages to its clinical pharmacist employees, from at least September 25, 2022, in violation of Missouri law, MO. REV. STAT. § 290.505. He claims that as hourly wage employees, he and other clinical pharmacists are entitled to overtime wages for hours worked in excess of 40 hours per week. He seeks to represent a class of persons who include:

> All clinical pharmacists employed by BJC who were not compensated at a rate of one- and one-half times their regular rate of pay for hours worked over forty (40) a week at any time from two years prior to the commencement of this lawsuit to the present or who were not compensated at 1/52 of their annual salary for weeks

> worked less than forty hours a week at any time from five years prior to the commencement of this lawsuit.

(Doc. 43, p. 4). The amended complaint includes two state law claims: failure to pay overtime wages (Count I) and an alternative breach of contract claim (Count II). Defendant was served on October 9, 2024.

Defendant timely removed this action on November 8, 2024 (Doc. 1) pursuant to 28 U.S.C. § 1332(d) and § 1453, the Class Action Fairness Act of 2005 (CAFA). As is relevant to removal, Defendant indicated that it is incorporated in Missouri and has its principal place of business in Missouri and that at least one potential class member is a citizen of Illinois. Accordingly, at the time of removal, there was subject matter jurisdiction under CAFA. Graphic Communications Local 1B Health & Welfare Fund A v. CVS Caremark Corp., 636 F.3d 971, 973 (8th Cir. 2011).

Plaintiff originally sought remand arguing that the local controversy and home state exceptions to CAFA apply, in that more than two-thirds of the proposed class may be Missouri citizens, to withdraw jurisdiction. On February 21, 2025 (Doc. 21), Plaintiff was permitted to conduct jurisdictional discovery. Discovery culminated in the production of an expert report concluding that two-thirds or more of the potential class (which total 146 persons) are citizens of Missouri, thus requiring CAFA jurisdiction to be withdrawn (Doc. 64-1). That expert report is based on a survey of the potential class members, limited by the Court to e-mail correspondence, that would establish their citizenship on November 8, 2024, the date of removal. Of the 45 responses, 32 were Missouri citizens. A hearing on the matter was held on October 7, 2026 in which the parties appeared by counsel. This Order follows.

## II. Discussion

As set forth in this Court's pervious Orders, there is no presumption against jurisdiction in class action lawsuits. Brunts v. Walmart, Inc., 68 F.4th 1091, 1094 (8th Cir. 2023); Bell v. Hershey

Co., 557 F.3d 953, 957 (8th Cir. 2009) ("A primary purpose in enacting CAFA was to open the federal courts to corporate defendants out of concern that the national economy risked damage from a proliferation of meritless class action suits."). Plaintiff bears the burden of establishing that exceptions to CAFA apply. Kitchin v. Bridgeton Landfill, LLC, 3 F.4th 1089, 1093 (8th Cir. 2021). Both exceptions are narrowly construed. Hargett v. RevClaims, LLC, 854 F.3d 962, 965 (8th Cir. 2017). The only question under either exception is whether two-thirds or more of the members of the proposed class are also Missouri citizens. To answer that question, Plaintiff employed an expert, Dr. Jon A. Krosnick.

At the hearing on this motion, Defendant challenges Dr. Krosnick's conclusions through their own expert, Dr. Elaine Reardon. Defendant does not, however, argue that Dr. Krosnick is unqualified to opine on the citizenship of the potential class. Likewise, Plaintiff does not assert that Dr. Reardon is unqualified. Both experts have the requisite education, knowledge, experience and skill of offer expert opinions in this matter. Accordingly, the Court finds that both experts are qualified within the meaning of Federal Rule of Evidence 702. United States v. Aungie, 4 F.4th 638, 645 (8th Cir. 2021) (holding that a full Daubert hearing is not always necessary prior to qualifying an expert witness). Defendant does argue, however, that Dr. Krosnick used an inflated "p-value," that his methodology is flawed because of a limited response and the concomitant presence of "nonresponse bias," and that Plaintiff's new argument that the interest of justice demand remand is waived.

Dr. Krosnick's emailed survey, which the Defendant had a hand in drafting, generated a 30% response rate (45 total responses). Of those responses, 32 met the qualifications of being Missouri citizens (i.e. they resided in Missouri on November 8, 2024 and intended to make Missouri their home), meaning that 71% of respondents are Missouri citizens. From those

numbers, Dr. Krosnick states that it is reasonable to conclude that there is a 79% probability that the true proportion of Missouri citizens is greater than two-thirds. In doing so, Dr. Krosnick refers to a "p-value of 0.21" which he describes as "the probability of observing a difference between the observed proportion (71%) and the proportion of two thirds (66.66%) that is as extreme as, or more extreme than, the difference observed, in the direction observed, assuming that the null hypothesis is true" (Doc. 64-1, p.p. 9-10). Dr. Krosnick further indicated that the 71% proportion is corroborated by statistics derived from a longitudinal population survey (the Panel Study of Income Dynamics (PSID) conducted by the University of Michigan). By distilling relevant data from that study, Dr. Krosnick found that from 2005 to 2023, 72.44% of pharmacists did not move to another state (Id. p. 13).

Dr. Reardon explains that Dr. Krosnick did not provide a "margin of error or the confidence interval around his survey estimate" which is standard practice – that he should have used a 0.05 p-value (Doc. 71-1, p. 5-6).[1] She states that at a 95% confidence interval, the result could indicate a range of 60% to 82% of persons being Missouri citizens, which makes the survey "indeterminate from a statistical perspective." Dr. Reardon further notes that the data from the PSID only included 22 households with pharmacists, only one of whom resided in Missouri; and, when the same 95% confidence level is used, the percentage of pharmacists who didn't move is within the range of 53% to 92%. Finally, Dr. Reardon states that Dr. Krosnick did not provide any explanation of the statistical significance of those person who did not respond to the survey.

This Court initially found it reasonable to assume that the Plaintiff class would contain a significant number of Missouri citizens in light of Defendant's physical location in the St. Louis area (Doc. 21, p. 5). The evidence to date bears out that assumption, notwithstanding Defendant's

---

[1] Put in very simplistic terms, the lower the p-value, the more unlikely the result is accurate. See Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 40 n.6 (2011).

efforts to dispute Dr. Krosnick's opinions. First, Defendant does not suggest that a p-value viewed alone and without context makes Dr. Krosnick's conclusions inaccurate. In this case the context includes a survey that was limited by this Court to email communication. Plaintiff advocated telephone communication, to which Defendant objected, which he believed would result in a greater response rate. Plaintiff also requested an unfettered ability to contact potential class members, to which Defendant also objected. Certainly, given the limited number of potential class members, it would be preferrable if each class member who could be reached could give a definitive answer of whether they are Missouri citizens. Such clarity, however, is not required by any case authority and is not realistic in light of the handcuffs placed on Plaintiff's ability to conduct the survey. As such, Defendant's argument that the response rate is too low to be statistically significant falls short. The actual survey results coupled with an understanding that it is likely that pharmacists who work in St. Louis locations also reside in Missouri (and are likely citizens of Missouri) render Dr. Krosnick's conclusion, that more than two-thirds of the potential plaintiff class were Missouri citizens, sound. Hargett v. RevClaims, LLC, 854 F.3d 962, 968 (8th Cir. 2017) (stating that the citizenship threshold can be established by "sound evidence" or "defining the class as local citizens").[2] Accordingly both exceptions to CAFA apply and this Court must decline jurisdiction.

Plaintiff also relies on the "interests of justice" exception to jurisdiction. 28 U.S.C. § 1332(d)(3). In that exception, the Court "may, in the interests of justice and looking at the totality of the circumstances" decline jurisdiction if more than one-third but less than two-thirds of the proposed Plaintiff class and Defendant are citizens of the same state, a threshold that is met in this

[2] Defendant relies on Hood v. Gilster-Mary Lee Corp., 785 F.3d 263 (8th Cir. 2015), to argue that the survey results are too close to be a reliable indicator on citizenship. In Hood, there was no statistical analysis – the Court noted that there was no "sample, sampling methodology, or other indication of a disciplined approach." This case is markedly different: there is a sample, sampling methodology, and a disciplined approach.

case. Defendant argues that Plaintiff has waived this argument by failing to raise it in the first instance. Graphic Communications, 636 F.3d at 975 (holding that non-§1447(c) motions to remand should be filed within a reasonable time). Defendant likens this matter to Barfield v. Soe-Me Power Elec. Co-op, 2014 WL 1343092 (W.D. Mo. 2014), where the District Court denied a motion to dismiss pursuant to a CAFA exception filed 27 months after the complaint was filed, 7 month after the class had been certified, and 4 months after the Court denied a motion to conduct a survey. Id. at *1. Certainly, Plaintiff should have been aware of this exception to jurisdiction. However, notwithstanding the passage of time, Defendant is not prejudiced by consideration of the exception. No scheduling order has been entered, no merits discovery has commenced, no class action has been certified, and no dispositive motions have been considered. And, the length of time from filing, November, 2024, to today is not wholly due to Plaintiff's actions alone. Both parties have been strenuously litigating the best way to determine the citizenship of the potential Plaintiff class. In light of the relative infancy of this case, the interests of justice further warrant remand. This matter does not implicate national interests, the claims are governed by Missouri law, there is a nexus between the state forum, the potential class members, and the alleged harm, and it is likely that the potential class is comprised of mostly Missouri citizens. 28 U.S.C. § 1332(d)(3)(A-F).

## III. Conclusion

For the foregoing reasons, Plaintiff's Third Motion to Remand **GRANTED** and this matter is **REMANDED** to the Circuit Court of the City of St. Louis.

***/s/ John M. Bodenhausen***
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of October, 2026